# United States Court of Appeals for the Fifth Circuit

No. 22-11099

Yoel Weisshaus,

*Plaintiff—Appellant*,

*versus*

Steve Coy Teichelman; 100th Judicial District,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 2:22-CV-35

_____

United States Court of Appeals
Fifth Circuit
**FILED**
February 14, 2024
Lyle W. Cayce
Clerk

Before Smith, Graves, and Wilson, *Circuit Judges*.

James E. Graves Jr., *Circuit Judge*:[*]

    Appellant Yoel Weisshaus brought a § 1983 Fourth Amendment Claim against police officer Steve Teichelman and the 100th Judicial District ("the District") alleging illegal search and seizure incident to a prolonged traffic stop. The district court granted the District's motion to dismiss for failure to state a claim and granted summary judgment based on qualified immunity to Teichelman. We AFFIRM.

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-11099

## Background

On March 2, 2020, Appellant was traveling with a passenger, Ms. Lee, from Oklahoma to Scottsdale, Arizona when he was pulled over in Texas by Officer Teichelman for speeding and displaying an obscured license plate and registration insignia. Teichelman requested to see Appellant's driver's license and registration and asked Appellant to accompany him to his patrol car. Ms. Lee stayed in the vehicle. While running Appellant's license and registration, Teichelman asked Appellant questions regarding his travel plans. Appellant was unable to provide details as to the length of his stay and hotel accommodations, and stated only that he was helping Ms. Lee move her belongings to New Jersey. Given that Appellant had a driver's license from New Jersey, was unable to give specific answers as to length of stay and hotel accommodations, and was traveling on I-40, a highway that was a known "drug and human trafficking corridor" with a woman "who appeared to be considerably younger with no familial connection," Officer Teichelman developed a suspicion of criminal activity. To dispel this suspicion, Teichelman decided to ask Ms. Lee the same questions he asked Appellant. Lee was unable to provide details and appeared "nervous, timid, and scared" and was avoiding eye contact and looking at the floorboard. Teichelman's suspicion of criminal activity elevated, and he asked Appellant if he would consent to a search of his vehicle. Appellant declined. Teichelman then walked his canine partner, Kobra, around the vehicle to do an open-air sniff.

Teichelman asserts that Kobra passively alerted to the scent of narcotics in the vehicle. Appellant argues that the dog did not alert because it did not sit, bark, or stop. Teichelman searched Appellant's vehicle. Finding nothing, Teichelman permitted Appellant to leave.

2

No. 22-11099

## Procedural History

On March 2, 2022, Appellant filed suit naming Teichelman and the District as Defendants. The District filed a motion to dismiss for failure to state a claim, which the district court granted. Teichelman filed a motion for summary judgment asserting qualified immunity, which the district court granted, holding Plaintiff could not establish that Teichelman violated clearly established law. Weisshaus appealed the grant of summary judgment.

## Standard of Review

"A grant of summary judgment is reviewed de novo, applying the same standard on appeal that is applied by the district court." *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016). "Typically, the movant bears the initial burden of demonstrating the absence of a material fact issue." *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). But "[a] good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." *Id.* (quoting *Cass v. City of Abilene*, 814 F.3d at 728 (internal quotation marks omitted)). To do so, a plaintiff must "identify specific evidence in the summary judgment record demonstrating that there is a material fact issue concerning the essential elements of its case for which it will bear the burden of proof at trial." *Id.* (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994)).

## Discussion

### I. Officer Teichelman

Appellant argues that Teichelman violated his Fourth Amendment right to be free from unconstitutional searches and seizures. The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. "The stopping of a vehicle and detention of its

3

occupants constitutes a 'seizure' under the Fourth Amendment." *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004). "We analyze the legality of traffic stops for Fourth Amendment purposes under the standard articulated by the Supreme Court in *Terry v. Ohio*, 392 U.S. 1 (1968)." *United States v. Smith*, 952 F.3d 642, 647 (5th Cir. 2020) (citation omitted). Under *Terry*, "the legality of police investigatory stops is tested in two parts." *Brigham*, 382 F.3d at 506. "Courts first examine whether the officer's action was justified at its inception, and then inquire whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop." *Id.*

Appellant does not argue that the stop was not justified at its inception. As to the second inquiry, we may assume that Appellant is correct that the initial justification for the stop ended when Teichelman issued the citation and returned his driver's license while Appellant was still in the patrol vehicle. Thus, there must have been some additional justification permitting Teichelman to prolong the stop.

The Fourth Amendment "permits an officer to initiate a brief investigative traffic stop when he has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Kansas v. Glover*, 140 S. Ct. 1183, 1187 (2020) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)). The "level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." *Id.* (quoting *Prado Navarette v. Cal.*, 572 U.S. 393, 397 (2014)). "The standard depends on the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.* at 1188 (internal quotations and citation omitted). The district court granted summary judgment to Teichelman based on qualified immunity, finding that Appellant had failed to show that any constitutional violation was clearly established.

The doctrine of qualified immunity "protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Anderson v. Valdez*, 845 F.3d 580, 599 (5th Cir. 2016). "This immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* "Accordingly, we do not deny immunity unless 'existing precedent [has] placed the statutory or constitutional question beyond debate.'" *Id.* at 599-600 (citation omitted). To defeat qualified immunity, Appellant must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Id.* at 600. "This court, like the district court, has 'discretion to decide which of the two prongs of the qualified-immunity analysis to tackle first.'" *Id.* (citation omitted). We begin with the second prong.

## A. Clearly Established

"If the defendant's actions violated a clearly established constitutional right" courts examine "whether qualified immunity is still appropriate because the defendant's actions were objectively reasonable in light of law which was clearly established at the time of the disputed action." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (internal quotations omitted). The court focuses on the state of the law at the time of the incident and whether it provided fair warning to the defendant that his conduct was unconstitutional. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). The caselaw must establish beyond debate that the officer's conduct violated then-clearly established law. *Baldwin v. Dorsey*, 964 F.3d 320, 326 (5th Cir. 2020). Appellant must "identify a case in which an officer acting under similar circumstances was held to [have committed a constitutional violation] and explain why the case clearly proscribed the conduct of the officer." *Joseph on behalf of Estate of Joseph v. Bartlett*, 981 F.3d 319, 345 (5th Cir. 2020) (citation amended). "It is the plaintiff's burden to find a case in his favor that does not define the law

5

at a high level of generality." *Rich v. Palko*, 920 F.3d 288, 294 (5th Cir. 2019) (quotations and citation omitted).

### i. Reasonable Suspicion

Appellant first argues that it was clearly established that Teichelman did not have reasonable suspicion to prolong the stop and conduct a dog sniff. A "police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Rodriguez v. United States*, 575 U.S. 348, 350 (2015). "A seizure justified only by a police-observed traffic violation, therefore, 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation." *Id.* "Once the purpose of a valid traffic stop has been completed and an officer's initial suspicions have been verified or dispelled, the detention must end unless there is additional reasonable suspicion supported by articulable facts." *United States v. Estrada*, 459 F.3d 627, 631 (5th Cir. 2006) (quoting *United States v. Machuca–Barrera*, 261 F.3d 425, 434 (5th Cir. 2001)). "If the officer develops reasonable suspicion of additional criminal activity during his investigation of the circumstances that originally caused the stop, he may further detain [the] occupants [of the vehicle] for a reasonable time while appropriately attempting to dispel this reasonable suspicion." *United States v. Andres*, 703 F.3d 828, 833 (5th Cir. 2013) (quoting *United States v. Pack*, 612 F.3d 341, 350 (5th Cir. 2010)). Reasonable suspicion exists "when the detaining officer can point to specific and articulable facts that, when taken together with rational inferences from those facts, reasonably warrant the search and seizure." *Id.*

Appellant has not shown that any constitutional violation was clearly established. It is undisputed that Teichelman questioned Appellant while he was seated in the car, still processing Appellant's documents. In this questioning, (1) Appellant was short with his responses to questions about his

travel plans, (2) Appellant had a New Jersey driver's license and was traveling on I-40, a known drug corridor, (3) with a female that appeared to be considerably younger than him, and (4) had no familial relation to him. Appellant has not shown that it was clearly established that under similar facts an officer was held to have committed a constitutional violation. In fact, we have previously found reasonable suspicion where the driver was unable to answer questions as to travel plans and where his story diverged from that of other occupants while traveling on a known drug corridor. (*See United States v. Smith*, 952 F.3d at 649 "we have consistently considered travel along known drug corridors as a relevant—even if not dispositive—piece of the reasonable suspicion puzzle." *Id.*)

For the same reasons, Appellant has failed to show that any continued detention to question Ms. Lee was clearly established as unconstitutional. After questioning Appellant, Teichelman questioned Lee with the same general questions on travel itinerary, and she (1) could not provide details as to the trip, (2) appeared nervous, timid, and scared, and (3) failed to make eye contact with him and looked at the floorboard. *See Andres*, 703 F.3d 828 at 833-34 (finding reasonable suspicion where the driver's untruthful answers, nervousness, and the anonymous tip about carrying drugs created additional reasonable suspicion justifying the continued detention). Furthermore, the reasonable suspicion determination "must be made based on the totality of the circumstances and the collective knowledge and experience of the officer or officers." *Estrada*, 459 F.3d at 631-32. Courts "must allow law enforcement officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *Brigham*, 382 F.3d at 507 (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)).

Appellant cites *United States v. Santiago*, for the proposition that it was clearly established that Teichelman unconstitutionally extended the

7

stop. 310 F.3d 336 (5th Cir. 2002). In that case the officer stopped Santiago for a flashing light hazard to oncoming traffic. The officer claimed he was suspicious because Santiago said they were traveling on vacation to Atlanta for one week before his kids started school, but his wife, who was in the car, said they were staying for 2-3 weeks. Further, the officer knew that school in Louisiana had already started. The officer also noted nervousness when he asked Santiago for his license, and the officer was suspicious because there was another woman's name on Santiago's car's registration. To dispel this, Santiago explained that school started later where he lived, hence the late travel date, and he also explained that the other woman on the registration was his ex-wife, but the car was his. The officer ran criminal history checks, and despite them coming back negative, and the car not being reported as stolen, the officer extended the stop and ultimately conducted a canine drug sniff. The court found that the officer unreasonably extended the stop in violation of Santiago's Fourth Amendment rights stating that the officer's suspicion of child trafficking and stolen vehicle were dispelled, and the conflicting statements and nervousness were not enough. *Id.* at 342.

Unlike in *Santiago*, Teichelman articulated that he was partly suspicious because Appellant was traveling on I-40, a known drug highway, with a woman who "appeared to be younger" and had no familial connection. Accordingly, pertinent facts present in this case, differ from those in *Santiago*. *See Smith*, 952 F.3d at 649 (finding that the totality of the circumstances supported reasonable suspicion where the stories of the driver and the non-relative passengers were inconsistent; the driver's story seemed implausible; and that they were traveling on an interstate frequently used to transport contraband). Accordingly, this court cannot say it is "beyond debate" that Teichelman did not have reasonable suspicion to extend the stop. *Tolan*, 572 U.S. at 656.

Furthermore, unlike in *Santiago*, Teichelman's suspicions were not dispelled. "Once the purpose of a valid traffic stop has been completed and an officer's initial suspicions have been verified or *dispelled*, the detention must end[.]" *Estrada*, 459 F.3d at 631 (citation omitted) (emphasis added). ("If the officer develops reasonable suspicion of additional criminal activity during his investigation of the circumstances that originally caused the stop, he may further detain [the] occupants [of the vehicle] for a reasonable time while *appropriately attempting to dispel* this reasonable suspicion.") *Andres*, 703 F.3d at 833 (citation omitted) (emphasis added). Here, neither Appellant nor Ms. Lee could give concrete travel details, they were traveling on a known drug highway with an out-of-state license, there was no familial relationship, and Ms. Lee was acting nervous, scared, and avoided eye contact. Only then did Teichelman conduct an open-air sniff. Accordingly, even if Teichelman did not have reasonable suspicion to prolong the stop to conduct the dog sniff, any violation was not clearly established.

**ii. Probable Cause**

Appellant next argues that it was clearly established that Teichelman did not have probable cause to search his vehicle. A police officer has probable cause to conduct a search when "the facts available to [him] would 'warrant a [person] of reasonable caution in the belief' that contraband or evidence of a crime is present." *Florida v. Harris*, U.S. 237, 243 (2013) (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983) (plurality opinion)). "The test for probable cause is not reducible to 'precise definition or quantification.'" *Id.* (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)). "All we have required is the kind of 'fair probability' on which 'reasonable and prudent [people,] not legal technicians, act.'" *Id.* (citation omitted). "In evaluating [this standard], we have consistently looked to the totality of the circumstances." *Id.* at 244. Our court "has repeatedly affirmed that an alert by a drug-detecting dog provides probable cause to search." *United States v.*

*Sanchez-Pena*, 336 F.3d 431, 444 (5th Cir. 2003). "The question—similar to every inquiry into probable cause—is whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime." Harris, 568 U.S. at 248.

Teichelman states that Kobra alerted. Appellant argues that the dog did not sit, bark, or stop, and thus did not alert and there was therefore no probable cause to search his vehicle. Even if Teichelman did not have probable cause to search the vehicle, any violation was not clearly established. "Evidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert." *Harris*, 568 U.S. at 246. Kobra is registered and trained to give passive alerts. Further, "[o]ur Fourth Amendment jurisprudence does not require drug dogs to abide by a specific and consistent code in signaling their sniffing of drugs to their handlers." *United States v. Clayton*, 374 F. App'x 497, 502 (5th Cir. 2010). Additionally, "[t]he question—similar to every inquiry into probable cause—is whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime." *Harris*, 568 U.S. at 248. The totality of the circumstances shows that in addition to his questioning of both Appellant and Ms. Lee, the lack of familial connection, and the drug highway; Teichelman is trained in highway interdiction, Teichelman routinely patrols I-40 with Kobra, and Kobra is registered and trained to alert to narcotics. Under this set of facts, Appellant has not shown that the search of his vehicle was clearly established as unconstitutional. Appellant cites to *Rodriguez*, 575 U.S. 348, to show that Teichelman violated

a clearly established constitutional right. Although Appellant references this case in the context of his *Monell* claim against the District, we discuss it here.[1]

In *Rodriguez*, Rodriguez was pulled over for driving on a highway shoulder. When the officer asked Rodriguez why he was driving on the shoulder, he answered that he swerved to avoid a pothole. The officer then asked Rodriguez if he would accompany him back to his patrol car, but he declined. The officer proceeded to run Rodriguez's information while in his patrol car, and it came back with no issues. He then asked both people in the car questions about where they were going, which they answered, and the officer issued a warning and returned all documents. *Rodriguez*, 575 U.S. at 351-52. At that point, the officer had fully completed everything related to the stop and "took care of all the business." *Id.* at 352. Despite this, the officer held Rodriguez while he conducted an open-air sniff around the vehicle. The dog alerted to drugs in the vehicle and a search revealed a large bag of methamphetamine. Rodriguez moved to suppress the evidence arguing that the officer prolonged the stop without reasonable suspicion.

The magistrate judge found that the continued detention for the dog sniff was not supported by individualized suspicion and the district court adopted those findings, but nonetheless denied the motion to suppress under Eighth Circuit precedent because the extension of the stop by seven to eight minutes was only a "*de minimis*" intrusion on Rodriguez's rights. The Eighth Circuit affirmed and did not address whether the officer had individualized suspicion. *Id.* at 352-53. The Supreme Court ultimately remanded the case for the Eighth Circuit to determine whether reasonable suspicion of criminal activity justified detaining the driver beyond the completion of the initial

---

[1] Appellant mentions that the "dog was only a fabricated pretext . . . for probable cause," and so it is probative to his argument that Teichelman did not have probable cause to search his vehicle.

traffic stop because an officer may not prolong the stop "absent reasonable suspicion ordinarily demanded to justify detaining an individual." *Id.* at 355; 358.

Here, similar to *Santiago*, pertinent facts of this case differ from the facts of our case. Unlike in *Rodriguez*, Teichelman specifically articulated his suspicion on why he suspected that criminal activity was afoot, and those reasons were not dispelled prior to extending the stop and conducting the search. Accordingly, Appellant has failed to establish that any constitutional violation was clearly established.

## II. The District

### Jurisdiction

Appellee first argues that Appellant has waived his right to appeal the district court's order dismissing the claims against the District because Appellant failed to "designate the judgment—or appealable order—from which the appeal is taken." Under Federal Rule of Appellate Procedure 3(c)(1)(B), a "notice of appeal must ... designate the judgment, order, or part thereof being appealed." *Carraway v. U.S. ex rel. Fed. Emergency Mgmt. Agency*, 471 F. App'x 267, 268 (5th Cir. 2012). "Rule 3's dictates are jurisdictional in nature, and their satisfaction is a prerequisite to appellate review." *Id.* However, "we construe a notice of appeal liberally to avoid technical barriers to review." *U.S. ex rel. Bias v. Tangipahoa Par. Sch. Bd.*, 816 F.3d 315, 327 (5th Cir. 2016). Because Appellant identified the final order in this case in his Notice of Appeal, we may assert jurisdiction. "Reviewing a final judgment, [] 'clearly encompasses the prior orders leading up to it.'" *Id.* at 328.

No. 22-11099

**Standard of Review**

The court conducts de novo review of a district court's order to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 734 (5th Cir. 2019). "To survive a Rule 12(b)(6) motion to dismiss, the complaint 'does not need detailed factual allegations,' but it must provide the plaintiff's grounds for entitlement to relief—including factual allegations that, when assumed to be true, 'raise a right to relief above the speculative level.'" *Taylor v. City of Shreveport*, 798 F.3d 276, 279 (5th Cir. 2015) (citation omitted). "We may affirm a district court's order dismissing a claim under Rule 12(b)(6) 'on any basis supported by the record.'" *Id.* (citation omitted).

***Monell* Liability**

Appellant argues that the District has a custom or policy of exploiting Texas laws by converting ordinary traffic stops into an opportunity for civil forfeiture. He argues that the District created the 100th Judicial District Traffic Enforcement Division ("Traffic Division") to use these traffic stops as an opportunity for civil forfeiture, to search, without probable cause, in hopes of finding large sums of cash or narcotics. Municipal liability under 42 U.S.C. § 1983 "requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell v. Dep't. of Social Services*, 436 U.S. 658, 694 (1978)). *Monell* does not encompass liability based on *respondeat superior*; accordingly, "the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; [and] isolated unconstitutional actions by municipal employees will almost never trigger liability." *Id.* There is no dispute that District Attorney Inman was

the District's policy maker. Accordingly, we look to whether there is an official policy.

"Although an official policy 'usually exists in the form of written policy statements, ordinances, or regulations, ... it may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Balle v. Nueces Cnty.*, 952 F.3d 552, 559 (5th Cir. 2017) (citation omitted). Appellant does not allege that there was a written policy, only that there was a "practice and custom" of unconstitutional seizures. "In order to find a municipality liable for a policy based on a pattern, that pattern 'must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice." *Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 396 (5th Cir. 2017). "A pattern requires similarity, specificity, and sufficiently numerous prior incidents." *Id.* Here, Appellant does not provide sufficient factual detail for this court to find an unconstitutional official policy.

At the district court, Appellant provided twenty-one instances where "the officer called a k-9 unit to prolong detentions after the purpose of the traffic stops had concluded pursuant to the District's unconstitutional pattern and practice." However, none of these examples provide the specific background necessary for a court to determine, for example, the purpose of the stop, whether the persons were guilty or not, any court rulings on the matter, any similarity between the occurrences, or number of total stops in context. *See Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 851 (5th Cir. 2009) (finding the district court did not err in holding that the plaintiff did not establish an unconstitutional official policy where the pattern evidence failed to provide context such as the size of the police department or number of arrests). Appellant only makes the conclusory assertion that these stops were prolonged due to an unconstitutional practice. That is not enough. To

survive a motion to dismiss, a plaintiff's "description of a policy or custom and its relationship to the underlying constitutional violation … cannot be conclusory; it must contain specific facts." *Balle*, 952 F.3d at 559 (quoting *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997)). Even if this court were to take at face value, Appellant's contention that "he was not required to plead these factual allegations" the remainder of his complaint, is conclusory. Accordingly, the district court did not err in dismissing the complaint against the District.

## Conclusion

We AFFIRM the district court.